Present:  All the Justices

UPPER OCCOQUAN SEWAGE AUTHORITY

                                        OPINION BY
v.  Record No. 062719       JUSTICE LAWRENCE L. KOONTZ, JR.
                                   January 11, 2008
BLAKE CONSTRUCTION CO., INC./POOLE
 & KENT, A JOINT VENTURE

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

This appeal concerns the continuing litigation of claims arising from a multi-million dollar contract subject to the Virginia Public Procurement Act ("VPPA"), Code §§ 2.2-4300 through -4377,[1] originally executed in December 1996 and subject to numerous modifications and changes during the course of the contractor's performance.  The principal issues we consider relate to the circuit court's determination regarding the application of, and percentage rate for, pre-judgment and post-judgment interest on various elements of the damages awarded to the contractor in two separate jury verdicts.  Additionally, we consider whether the circuit court correctly determined that the appellant, the defendant below, timely designated the allocation of a payment made on the judgments.

---

[1] At the time the first claims under this contract arose in the circuit court, the VPPA was codified at Code § 11-35 et seq., but was recodified at Code § 2.2-4300 et seq. by the General Assembly in 2001.  As applied to the issues raised in this appeal, the recodification did not materially alter any relevant provision of the Act and, accordingly, we will refer to the current Code sections in this appeal.

BACKGROUND

The arduous history of the litigation arising from the public contract that is the genesis of this case has been previously recounted in detail in two prior appeals arising from earlier stages of that litigation. See Blake Construction Co. v. Upper Occoquan Sewage Authority, 266 Va. 564, 568-570, 587 S.E.2d 711, 713-14 (2003); Upper Occoquan Sewage Authority v. Blake Construction Co., 266 Va. 582, 584-87, 587 S.E.2d 721, 722-23 (2003). Accordingly, we need not recite that background here. It will suffice to state that Blake Construction Company, Inc. and Poole & Kent Corporation (collectively, "the Joint Venture") formed a partnership to bid on a public contract with the Upper Occoquan Sewage Authority ("UOSA"), a public authority created pursuant to the Virginia Water and Waste Authorities Act, Code §§ 15.2-5100 through –5158, for construction of a waste water treatment facility to be located in Fairfax County ("the Project"). The Joint Venture was the successful bidder on the Project and was awarded the contract on December 10, 1996. The oversight of the Project by UOSA was contentious and resulted in the litigation that was the subject of the prior cases decided by this Court in 2003.

The present case arises from a "Petition for Declaratory Judgment and Appeal" filed by the Joint Venture in the Circuit Court of Fairfax County on August 13, 2002 while the former

appeals were pending in this Court. Therein, the Joint Venture sought to be permitted to terminate the December 1996 contract based on UOSA's alleged multiple material breaches of the contract. The Joint Venture also appealed certain administrative decisions of UOSA denying claims by the Joint Venture regarding the contract and to have determined the amounts owed under those claims as well as to be awarded compensatory damages, most of which were for undisputed liquidated amounts, on numerous claims for work already performed. The Joint Venture also sought to be awarded "finance charges" it contended were due under terms of the contract governed by the prompt payment provisions of the VPPA, Code §§ 2.2-4347 through -4356 ("the Prompt Payment Act"), for the amounts it claimed were owed to it by UOSA as of various dates.[2]

The case was first tried to a jury in November 2003 ("the First Trial"), and at the conclusion of the Joint Venture's case-in-chief, the circuit court sustained UOSA's motion to strike all or part of eighteen of the Joint Venture's claims. The remaining issues were submitted to the jury. As relevant to

---

[2] Because the parties and the circuit court have each referred to the statutes comprising Article 4 of the VPPA as being the "Prompt Payment Act," we will likewise employ that short form reference to refer to those statutes in this opinion.

3

one of the principal issues in this appeal, the jurors were instructed that

> the terms of the contract do not provide for a rate of interest.  In any situation where you determine that interest is due under [Code § 2.2-4352 of] the Virginia Prompt Payment Act, you must determine the payment amount subject to interest, the payment date when payment is due, and the interest rate, which by statute is not to exceed 1% per month.

The jury rendered its verdict on November 6, 2003, using an interrogatory verdict form.  In accord with the circuit court's instruction, the jury made express findings of the specific amounts due the Joint Venture and the dates on which those amounts had become due.  The jury also determined that on all those amounts interest at a rate of 1% per month was to apply, but the jury did not calculate the amount of interest thus due.  The correctness of the jury's findings and verdicts on the Joint Venture's various claims are not at issue in this appeal, nor is there any dispute as to the amount of compensatory damages awarded to the Joint Venture in those verdicts, which in aggregate totaled $5,165,195.

In accord with the jury's findings in the First Trial, the circuit court awarded pre-judgment interest at the rate of 1% per month on the compensatory damages to the Joint Venture from the dates of the various claims to the date of the jury's verdict, which the court calculated to be $1,832,652.  The parties also do not dispute the accuracy of this figure.

4

The beginning of the subsequent dispute between the parties in the case originated with an order of the circuit court dated November 19, 2003, but entered nunc pro tunc to November 6, 2003, the date of the jury's verdict. The order recited the particulars of the court's decision to strike certain of the Joint Venture's claims, the jury's findings and verdicts on the remaining claims, and the amount of compensatory damages awarded by the jury in the First Trial. The order also recited the court's calculation of the "Total Interest due under the Prompt Payment Act through November 6, 2003." The court also entered a declaratory judgment in favor of the Joint Venture, finding that UOSA had materially breached the contract.

Although the circuit court styled the November 19, 2003 order as a "final order," and despite having entered the order "nunc pro tunc" to the date of the jury's verdict, in the concluding paragraphs the court expressly suspended the effective date of the order until January 20, 2004 to permit the parties to file "post trial [m]otions," and included a briefing schedule for those motions. The court also expressly stated in the concluding paragraph that it would retain "jurisdiction to reconsider all aspects of this judgment, including whether this Order should be a 'Final Order,' and to consider and rule upon such post trial [m]otions as may be filed pursuant to the provisions of this Order, and to modify, vacate, or further

suspend this Order until January 20, 2004, or such later date as may be established by further Order of this Court."

On November 26, 2003, the Joint Venture filed a motion pursuant to Code § 8.01-186 asserting that it was entitled to additional compensatory damages. This statute permits a court to award "[f]urther relief based on a declaratory judgment order or decree . . . whenever necessary or proper." UOSA opposed the motion, and the circuit court conducted a hearing thereon on January 7, 2004. By order dated January 15, 2004, the court determined that it would grant the motion and consider awarding the Joint Venture additional compensatory damages for UOSA's material breaches of the contract.

Also on January 15, 2004, the circuit court entered an amended order that vacated the November 19, 2003 order, reimposed the judgments under the same terms that had been stated therein, but provided that "any execution . . . is suspended and stayed as to the [November 19, 2003] judgments . . . pending further order of this Court." This order further provided, however, "that the right is reserved to UOSA to satisfy the judgments rendered [in the order] in whole or in part." The order also expressly continued the case on the court's docket.

Following an extended jury trial limited to the issue of the compensatory damages to be awarded for the material breaches

6

of the contract ("the Second Trial"), the jury determined the total value of the benefit conferred on UOSA by the work performed by the Joint Venture to be $210,234,000. The jury's verdict was rendered on March 11, 2005.

Using the figure determined by the jury, the circuit court, in a final order dated June 27, 2005, awarded the Joint Venture additional compensatory damages in the amount of $7,509,239.62 and also awarded $1,453,192 in pre-judgment interest on this amount.[3] In that same order, the court also lifted the January 15, 2004 order's suspension of the judgment from the First Trial.

The parties filed cross-appeals from the June 27, 2005 final order, challenging various aspects of the two judgments and the circuit court's conduct of the case. On behalf of UOSA, Wachovia Bank issued an irrevocable letter of credit for $16,717,658.88 in favor of the Joint Venture as a suspension bond for UOSA's appeal. This Court refused those appeals, Blake Construction Co. v. Upper Occoquan Sewage Authority, Record No. 052001 (February 23, 2006) and Upper Occoquan Sewage Authority v. Blake Construction Co., Record No. 052003 (February 23,

---

[3] The circuit court did not award an express amount in pre-judgment interest in this order, but provided a formula for its calculation. The parties do not dispute that the amount of pre-judgment interest under this formula is $1,453,192.

2006), and denied subsequent petitions for rehearing filed by the parties, Blake Construction Co. v. Upper Occoquan Sewage Authority, Record No. 052001 (May 4, 2006) and Upper Occoquan Sewage Authority v. Blake Construction Co., Record No. 052003 (May 4, 2006).  Accordingly, the judgments became final and due on May 4, 2006 upon entry of the orders denying the petitions for rehearing.

On May 8, 2006, UOSA wired to counsel for the Joint Venture a payment of $16,616,472.11, which it contended represented payment in full for all amounts due under the June 27, 2005 order, including pre-judgment interest and post-judgment interest to the date of payment.[4]  Counsel for the Joint Venture requested that counsel for UOSA provide details as to how it arrived at the $16,616,472.11 figure.  In a letter dated May 10, 2006, counsel for UOSA provided an itemized calculation of the payment, which UOSA contended was adequate to satisfy the total

_____

[4] The actual amount wired on May 8, 2006 was $16,613,386.17. During subsequent communications between the parties, the Joint Venture noted that UOSA had failed to include in its payment $1,984.20 in costs that had been awarded to the Joint Venture. UOSA subsequently made an additional payment to the Joint Venture to cover this amount and to correct another miscalculation that was not disputed.  For purposes of this appeal, these discrepancies and the remedial payment by UOSA are not germane to the issues under consideration, and the Joint Venture has stipulated that the total amount paid by UOSA, $16,616,472.11, can be treated as if it were received on May 8, 2006.

amount due under the June 27, 2005 order.  In that letter, UOSA requested that the Joint Venture file a satisfaction of judgment and return the letter of credit given as security for UOSA's appeal.

In a letter to UOSA's counsel dated May 16, 2006, counsel for the Joint Venture contended that $16,616,472.11 represented only a "partial payment" of the total amount due under the June 27, 2005 order.  Specifically, the Joint Venture maintained that UOSA had improperly failed to include additional interest on the compensatory damages awarded in the First Trial for the period between the November 6, 2003 jury verdict and the entry of the June 27, 2005 order,[5] that UOSA had incorrectly calculated post-judgment interest on the compensatory damages awarded in the First Trial after June 27, 2005 at 6% per year, the then effective rate of post-judgment interest under Code § 6.1-330.54, rather than the 1% per month rate under the Prompt Payment Act, and that UOSA had failed to calculate post-judgment interest on the amount of pre-judgment interest related to the

---

[5] The parties disagree as to the character of the interest, as either pre-judgment or post-judgment, that the Joint Venture sought to collect on the compensatory damages from the First Trial for the November 6, 2003 to June 27, 2005 period.  As this issue is to be resolved by our consideration of this appeal, we will avoid making any distinction within our recitation of the facts, and refer to this element of the First Trial claim as "additional interest."

compensatory damages awarded in both the First Trial and the Second Trial.

In an exhibit attached to the May 16, 2006 letter, the Joint Venture presented its own calculations for the additional interest payments it alleged were due and also how it would allocate the $16,616,472.11 "partial payment" to the amounts as it had calculated them.[6]

On May 19, 2006, in response to the Joint Venture's assertion that the $16,616,472.11 payment did not represent the full amount due under the June 27, 2005 order, UOSA filed in the circuit court a motion for satisfaction of the judgment pursuant to Code § 8.01-455.  In supporting memoranda, UOSA contended that the amount of pre-judgment interest on the compensatory damages awarded to the Joint Venture in the First Trial under the Prompt Payment Act had been fixed by the November 19, 2003 order at $1,832,652 and that the November 19, 2003 order was subsequently incorporated into the January 15, 2004 order and

---

[6] Throughout the subsequent litigation of the issues concerning the amount of interest due, the parties constantly revised and restated their calculations, resulting in a considerable amount of confusion in the record as to the amounts being claimed and contested.  Because the issues raised in this appeal relate to the applicability of pre-judgment and post-judgment interest, and not to the calculation of that interest, we will not express any view as to the correctness of the Joint Venture's calculations or any alternative calculation asserted by UOSA.

confirmed by the June 27, 2005 final order without modifying that amount of interest or providing for the continuation of pre-judgment interest until entry of the final order on June 27, 2005. UOSA maintained that the court lost jurisdiction to modify the June 27, 2005 order 21 days after its entry and, therefore, no additional pre-judgment interest on the compensatory damages awarded in the First Trial was due for the period between the November 6, 2003 nunc pro tunc date of entry of the November 19, 2003 order and the entry of the June 27, 2005 final order. UOSA further contended that following the entry of the final order post-judgment interest would accrue on the compensatory damages only at the then effective statutory rate of interest of 6% per year.

UOSA also contended that the Joint Venture was improperly seeking to have post-judgment interest applied to the pre-judgment interest on the compensatory damages awarded in both the First Trial and the Second Trial because there was no authority for the Joint Venture's assertion that post-judgment interest would accrue on an award of pre-judgment interest. Finally, UOSA contended that if it was deemed to owe additional amounts to the Joint Venture, it had a right to allocate the $16,616,472.11 payment previously made first to those portions of the judgment debt that it contended were subject to accrual of interest, and that it had in fact made such an allocation by

providing the Joint Venture with UOSA's calculation of the total amount due by the attachment to the May 10, 2006 letter.

On June 2, 2006, the Joint Venture filed a memorandum opposing the entry of an order of satisfaction of the judgment. The Joint Venture contended that under the terms of Code § 8.01-382 and the Prompt Payment Act, interest on the compensatory damages awarded in the First Trial continued to accrue on any unpaid portion of the judgment at 1% per month, including the period between November 6, 2003 and June 27, 2005, until the compensatory damages awarded by the jury were paid in full. The Joint Venture further contended that it was entitled to post-judgment interest on the amount of pre-judgment interest related to the compensatory damages awarded in both the First Trial and the Second Trial from the dates those two judgments were rendered.

In a supplemental memorandum filed June 16, 2006, the Joint Venture contended that UOSA had not made a timely allocation of the May 8, 2006 payment. Thus, the Joint Venture contended that the calculation of the amounts due and the allocation of the payment to those amounts in its letter of May 16, 2006 was the proper allocation of the May 8, 2006 payment.

On June 30, 2006, the circuit court issued an opinion letter in which it addressed the issues raised in UOSA's motion for satisfaction of the June 27, 2005 judgment and the parties'

12

supporting memoranda.  The court first opined that, under Code § 8.01-382, post-judgment interest accrued on the compensatory damages awarded in the First Trial from November 6, 2003 until paid at an annual rate of 6%, the statutory rate of interest then applicable under Code § 6.1-330.54 as in effect on June 27, 2005.  The court further opined that "it is necessary to apply post-judgment interest to the entire award" and, thus, the court concluded that the jury's award of pre-judgment interest in the First Trial and the pre-judgment interest awarded by the court in the Second Trial were subject to accrual of post-judgment interest at the 6% statutory rate also.  Finally, the court determined that the attachment to UOSA's May 10, 2006 letter to the Joint Venture was effective as an "essentially contemporaneous" directive to the Joint Venture to allocate the May 8, 2006 payment in accord with UOSA's calculations.

In an order dated June 30, 2006, which incorporated by reference the circuit court's opinion letter of the same date, the court entered judgment in accord with the views articulated in that letter.  The circuit court did not expressly address UOSA's contention that the June 27, 2005 order was a final order and not subject to modification by an award of additional interest not expressly called for in that order, but implicitly rejected that contention by determining that additional interest

13

was due on the compensatory damages awarded in the First Trial for the period between November 6, 2003 and June 27, 2005.

On July 12, 2006, the Joint Venture filed a motion for reconsideration of the June 30, 2006 order. The Joint Venture contended that the circuit court erred in applying the 6% statutory annual rate of interest to the compensatory damages awarded in the November 6, 2003 jury verdict. The Joint Venture maintained that under the provisions of the Prompt Payment Act, it was entitled to 1% interest per month on the compensatory damages awarded in the First Trial until the judgment was paid, and not merely as pre-judgment interest after which the statutory rate of interest would apply for the imposition of post-judgment interest. In the alternative, the Joint Venture contended that the correct rate of statutory interest as to the compensatory damages awarded in the First Trial, and to the pre-judgment interest thereon, was 9% per year because that was the applicable rate of interest under Code § 6.1-330.54 as it was in effect on the date of the jury's verdict in the First Trial. The Joint Venture did not request that the circuit court reconsider the determination that UOSA had made a timely designation of the allocation of the May 8, 2006 payment, nor did it contest that the 6% statutory annual rate of interest was proper as to the compensatory damages and pre-judgment interest awarded in the Second Trial.

In response to the Joint Venture's motion for
reconsideration, UOSA reiterated its prior position that no
interest was due on the compensatory damages awarded in the
First Trial for the period from November 6, 2003 to June 27,
2005, but that if interest was due, the circuit court had
properly set that rate of interest based on the then effective
annual rate of interest of 6% established by Code § 6.1-330.54.
UOSA further contended that even if a 9% annual rate were to
apply based on the former provisions of Code § 6.1-330.54 as in
effect at the time of the jury's verdict in the First Trial, the
subsequent amendment of the statute as effective July 1, 2004
lowering the annual rate of interest to 6% should apply to any
interest due on and after that date.  UOSA also continued to
contest the award of post-judgment interest on the awards of
pre-judgment interest in both the First Trial and the Second
Trial.

On August 8, 2006, the circuit court issued a further
opinion letter in which it disagreed with the Joint Venture that
the court had improperly applied the statutory rate of interest
to the compensatory damages awarded in the First Trial instead
of the Prompt Payment Act rate of 1% per month.  In reaching
this conclusion, the court relied upon Code § 8.01-382 for the
proposition that unless otherwise provided for in the order, a
judgment "shall bear interest at the judgment rate of interest

15

as provided for in [Code] § 6.1-330.54 from its date of entry or from the date that the jury verdict was rendered."

The circuit court agreed, however, that it should have applied the 9% annual rate of interest, the rate effective on January 15, 2004, to both the compensatory damages and the pre-judgment interest awarded in the First Trial. The court further opined that this rate of interest would continue despite the amendment of Code § 6.1-330.54 effective July 1, 2004 lowering the statutory annual rate of interest to 6%. In doing so, the court recognized that a subsequent amendment to that Code section effective July 1, 2005 included the addition of the following language:

> The rate of interest for a judgment shall be the judgment rate of interest in effect at the time of entry of the judgment and shall not be affected by any subsequent changes to the rate of interest stated in this section.

The court reasoned that this provision, while not applicable to the June 27, 2005 order, was merely declarative of existing law, and ruled that an award of statutory post-judgment interest is fixed at the rate in effect at the time the judgment is rendered.

By an order entered August 8, 2006, the circuit court, adopting the reasoning of the opinion letter of that date, entered judgment for the Joint Venture modifying the post-judgment interest rate on the compensatory damages and pre-

16

judgment interest awarded in the First Trial verdict to 9% per year from November 6, 2003 until paid. At the request of the parties, in part because both the June 30, 2006 and August 8, 2006 orders had been entered without endorsement by counsel under Rule 1:13, on September 29, 2006 the court entered a further order clarifying and reiterating the effect of the two prior orders addressing UOSA's motion for satisfaction of the June 27, 2005 judgment. The order was endorsed by counsel for both parties, with each party reserving all arguments and objections raised during the course of the proceedings on the motion for satisfaction of the judgment.

UOSA appealed the circuit court's judgment, presenting seven assignments of error, and the Joint Venture assigned cross-error to two additional issues in its brief in opposition to UOSA's petition for appeal. By an order dated April 11, 2007, we awarded UOSA an appeal and also awarded an appeal on the assignments of cross-error.

DISCUSSION

As our recitation of the background of the protracted litigation in this case reflects, the issues raised here relate to proceedings in the circuit court beginning with an initial jury verdict on November 6, 2003 in favor of the Joint Venture, the entry of an order on January 15, 2004 establishing the amount of principal and pre-judgment interest due as of the date

17

of the jury's verdict, a second jury verdict in favor of the Joint Venture and a final order entered on June 27, 2005 establishing the amount of principal and pre-judgment interest due on that verdict as well as confirming the January 15, 2004 judgment amounts, a payment by UOSA on May 8, 2006 purporting to satisfy the amounts due the Joint Venture under the June 27, 2005 final order, and the order entered on September 29, 2006 addressing UOSA's motion for satisfaction of the June 27, 2005 judgment. For clarity, the following charts illustrate which aspects of the two judgments are not disputed, and are no longer subject to review given this Court's refusal of the petitions for appeal previously filed by both parties, and the amounts and rates of interest ultimately awarded by the circuit court which the parties dispute.

**Table 1: Judgment Items Not Disputed**

| JUDGMENT ITEM | AMOUNT |
|---|---|
| Compensatory damages awarded in the First Trial effective as of the November 6, 2003 jury verdict | $ 5,165,195 |
| Pre-judgment interest on the compensatory damages awarded in the First Trial effective as of the November 6, 2003 jury verdict | $ 1,832,652 |
| Compensatory damages awarded in the Second Trial effective as of the June 27, 2005 order of judgment | $ 7,509,240 |
| Pre-judgment interest on the compensatory damages awarded in the Second Trial effective as of the June 27, 2005 order of judgment | $ 1,453,192 |
| Post-judgment interest on the compensatory damages awarded in the Second Trial verdict from June 27, 2005 to May 8, 2006 | $ 387,600 |

**Table 2: Disputed Judgment Items**

| JUDGMENT ITEM | CIRCUIT COURT | JOINT VENTURE | UOSA |
|---|---|---|---|
| Additional interest on the compensatory damages awarded in the First Trial from November 6, 2003 to May 8, 2006 | $ 1,162,805 (calculated at 9% per year) | $ 1,550,408 (calculated at 1% per month) | $ 266,606 (calculated at 6% per year from June 27, 2005) |

18

| | | | |
|---|---|---|---|
| Post-judgment interest on pre-judgment interest on the compensatory damages awarded in the First Trial from November 6, 2003 to May 8, 2006 | $ 412,573 (calculated at 9% per year) | $ 412,573 (calculated at 9% per year) | - 0 - |
| Post-judgment interest on pre-judgment interest on the compensatory damages awarded in the Second Trial from June 27, 2005 to May 8, 2006 | $ 75,009 (calculated at 6% per year) | $ 75,009 (calculated at 6% per year) | - 0 - |
| Amount due as of May 8, 2006 | $1,383,778 | $1,771,380 | - 0 - |

UOSA contends that no interest is due on the judgment from the First Trial for the period between November 6, 2003 and June 27, 2005 and the circuit court erred in awarding post-judgment interest on the pre-judgment interest awarded in both trials. UOSA further contends that the court should have applied the 6% per year statutory rate of interest on the compensatory damages awarded in the First Trial, rather than a 9% rate, between June 27, 2005 and May 8, 2006 when payment was made. Accordingly, UOSA contends that there is no balance due and, thus, the circuit erred in not granting its motion for satisfaction of the judgment.

The Joint Venture contends that the amount remaining due under its calculation reflects the continuing accrual of post-judgment interest at a rate of 1% per month on the compensatory damages awarded in the First Trial. Alternately, if the circuit court's calculation is correct and the determination that UOSA made a timely allocation of the May 8, 2006 payment is affirmed, the Joint Venture concedes that the amount due reflects only unpaid post-judgment interest.

19

The issues we are required to resolve in this case, under the assignments of error and cross-error, may be summarized as follows:

1. Whether the circuit court had jurisdiction to determine that additional interest not expressly called for in the June 27, 2005 order was due to the Joint Venture;

2. Whether the circuit court erred in determining that additional interest accrued on the compensatory damages awarded in the First Trial from November 6, 2003 until paid at the rate of 9% per year rather than 1% per month;

3. Whether the circuit court erred in determining that post-judgment interest accrues on pre-judgment interest;

4. Whether the circuit court erred in determining that UOSA's letter of May 10, 2006 was a timely directive allocating the May 8, 2006 payment; and,

5. Whether the circuit court erred in not granting UOSA's motion for satisfaction of the judgment.

Each of these issues, which we will address in the order outlined above, presents a question of law. Accordingly, we review the circuit court's judgment de novo. PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006).

## Jurisdiction

UOSA first contends that the circuit court, in considering UOSA's 2006 motion for satisfaction of the judgment, erred in awarding any additional interest on the compensatory damages of the First Trial to the Joint Venture beyond the express amounts provided for in the January 15, 2004 order as incorporated in

20

the June 27, 2005 order.  This is so, UOSA maintains, because the June 27, 2005 order was a final order that was not modified, vacated or suspended within 21 days of its entry and which was subsequently affirmed by this Court's refusal of the petitions for appeal and petitions for rehearing filed by UOSA and the Joint Venture.  Thus, UOSA contends that the court lacked jurisdiction to modify that order by determining that additional interest was due and then awarding that interest.

More specifically, UOSA contends that the January 15, 2004 order fixed the amount of pre-judgment interest on the compensatory damages of the First Trial at $1,832,652 and that the court's subsequent award of $762,892, as calculated by UOSA, of additional interest for the period of November 6, 2003, the date of the jury's verdict, to June 27, 2005, the date of the final order, was an impermissible modification of the judgment more than 21 days after its entry.  We disagree.

It is not disputed that the June 27, 2005 order was the final order with respect to the declaratory judgment action filed by the Joint Venture on August 13, 2002.  "Generally speaking, a final order for purposes of Rule 1:1 'is one which disposes of the whole subject, gives all the relief contemplated, . . . and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.' " James v. James, 263 Va. 474, 481, 562 S.E.2d 133, 137 (2002)

21

(quoting Daniels v. Truck & Equipment Corp., 205 Va. 579, 585, 139 S.E.2d 31, 35 (1964)).  Thus, UOSA is correct in asserting that because the June 27, 2005 order was the final order in the declaratory judgment action, the circuit court's jurisdiction to modify, vacate or suspend that order expired 21 days after the entry of that order under this Court's Rule 1:1.  This rule, however, does not resolve the matter.

When, as in this case, a judgment debtor files a motion pursuant to Code § 8.01-455 to have the appropriate circuit court "mark" a judgment satisfied, that motion necessarily invokes the continuing jurisdiction of the court "to superintend ministerially the execution of the order" in which the judgment was granted.  Contrary to the view asserted by UOSA, the court's jurisdiction in such matters is not limited to merely granting or denying the relief requested based solely on the facts asserted in the motion and the judgment debtor's claim that its payment represents the totality of the judgment debt.  Rather, a motion for satisfaction of a judgment, at a minimum, requires the court to determine the amount of the judgment including any interest that would have accrued in the interim between the entry of the judgment and the alleged date of satisfaction.  Moreover, in making that determination, the court may be required to resolve questions of law and disputed issues of fact.  See, e.g., Virginia Polytechnic Inst. & State Univ. v.

22

Interactive Return Service, 271 Va. 304, 308, 626 S.E.2d 436, 438 (2006) (determination of whether circuit court erred in denying motion to have judgment marked satisfied required interpretation of other statutes); Smock v. Dade, 26 (5 Rand.) Va. 639, 645 (1826) (requests for satisfaction of a judgment involve questions of fact that may be submitted to a jury).  In such cases the burden of proof as to entitlement to relief under Code § 8.01-455 rests with the judgment debtor.  Leasing Service Corp. v. Justice, 243 Va. 441, 444, 416 S.E.2d 439, 441 (1992).

Additionally, it is a well-established principle in our jurisprudence that circuit courts have the authority to interpret their own orders.  Fredericksburg Construction Co. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 143-44, 530 S.E.2d 148, 152 (2000).  Here, by filing the motion pursuant to Code § 8.01-455 to have the judgments obtained by the Joint Venture marked satisfied, UOSA was requesting that the circuit court interpret the June 27, 2005 final order, and by logical extension the January 15, 2004 order that was made effective by that final order, to determine the total amount that had been awarded to the Joint Venture and whether that award had been satisfied by the payment tendered by UOSA on May 8, 2006.  UOSA may, and indeed does, take exception to the circuit court's interpretation of the order and has the right to seek review of that action on appeal.  See id. at 144, 530 S.E.2d at 152

23

(holding that a circuit court's interpretation of its own orders is subject to review, but that deference is owed to the court's interpretation).  Nevertheless, the court acted within its jurisdiction to make that interpretation and, thus, to determine the factual issue of whether the judgment was fully satisfied by UOSA.  Accordingly, we hold that when a circuit court is called upon under Code § 8.01-455 to determine whether a judgment awarded in a final order has been satisfied, it acts within its jurisdiction to interpret that order and, where a proper interpretation warrants, to determine whether any additional interest is due on the judgment.

<u>Accrual of Additional Interest on the</u>
<u>Suspended Judgment of the First Trial</u>

UOSA contends that in interpreting the January 15, 2004 order, the circuit court erred in finding that the order required additional interest, which it characterizes as "pre-judgment interest," to accrue on the compensatory damages awarded in the First Trial while execution of that order was suspended.  UOSA contends that there was no provision in the January 15, 2004 order for additional pre-judgment interest on the compensatory damages awarded in the First Trial beyond the $1,832,652 calculated by the circuit court.  UOSA asserts that this was a lump sum award made by the jury in the November 6, 2003 verdict and, thus, the court could not award additional

pre-judgment interest for the period during which execution on the judgment was suspended.  UOSA further contends that because the January 15, 2004 order was interlocutory and not subject to appeal, neither could post-judgment interest begin to accrue on the compensatory damages until the suspension of the judgment was lifted by the final order on June 27, 2005.

In support of these contentions, UOSA relies on Code § 8.01-382,[7] which in relevant part provides:

> In any action at law or suit in equity, the verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence.  The judgment or decree entered shall provide for such interest until such principal sum be paid.  If a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded or jury verdict shall bear interest at the judgment rate of interest as provided for in § 6.1-330.54 from its date of entry or from the date that the jury verdict was rendered.

The Joint Venture responds that the interest which the circuit court imposed on the compensatory damages awarded in the First Trial for the period between November 6, 2003 and June 27, 2005 is properly characterized as "post-judgment interest" and that the court did not err in interpreting the judgment of the January 15, 2004 order as being subject to accrual of such

---

[7] Code § 8.01-382 was amended effective July 1, 2004 and, in accord with UOSA's choice on brief, we have quoted the current version of the statute here.

25

interest even though execution of the judgment was suspended until entry of the final order.[8]  This is so, the Joint Venture maintains, because Code § 8.01-382 imposes post-judgment interest from the "date of entry [of the judgment] or from the date that the jury verdict was rendered" and there is no requirement of finality of a judgment before post-judgment interest can accrue.  The Joint Venture further contends that to deny it interest on the judgment entered on the jury's November 6, 2003 verdict during the period in which execution on that judgment was suspended would provide a windfall to UOSA and penalize the Joint Venture for seeking to enforce its right to additional compensatory damages in the Second Trial for the material breaches of the contract.

The justification for the award of interest on damages – whether pre-judgment, post-judgment, or both – in a civil lawsuit, has been recognized since the earliest days of this Commonwealth:  "[N]atural justice [requires] that he who has the use of another's money should pay interest for it."  Jones v. Williams, 6 Va. (2 Call) 102, 106 (1799); see also J.W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 325, 377

---

[8] The Joint Venture notes that it nonetheless contends that the circuit court erred in determining the rate of interest for the compensatory damages awarded in the First Trial, which we will consider, infra.

26

S.E.2d 605, 608 (1989) (quoting Jones with approval). The terms "pre-judgment interest" and "post-judgment interest" are not defined in the Code or in our case law. Nonetheless, the principal distinction between pre-judgment and post-judgment interest is that the decision whether to award pre-judgment interest is discretionary with the trier of fact, while the application of post-judgment interest for all money judgments is mandatory. Code § 8.01-382; Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994). As we stated in Dairyland Ins., "[u]nderlying this distinction is the principle that [p]rejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered. In contrast, postjudgment interest is not an element of damages, but is a statutory award for delay in the payment of money actually due." Id. at 631-632, 449 S.E.2d at 801 (internal citations and quotation marks omitted).

Given that an award of pre-judgment interest is discretionary, but that application of post-judgment interest is mandatory, the necessity for establishing the point at which the former, when it has been awarded, ceases to accrue, and when the latter will begin to accrue is self-evident. As the present case amply demonstrates, clear guidelines as to the calculation of such interest will resolve disputes regarding the amount of the pre-judgment or post-judgment interest whenever there is a

27

delay between the rendering of a jury verdict, the entry of an order confirming that verdict, the entry of an order ending the cause if later than the order confirming the verdict, the finality of the judgment following the exhaustion of appeals, and the date tender of payment in satisfaction of the judgment debt is made.

We are of opinion that Code § 8.01-382 is clear and unambiguous as to when, and how, the application of post-judgment interest begins.  In simplest terms, that statute provides that post-judgment interest shall begin to accrue on the date that a fixed amount of a judgment debt is rendered by the factfinder charged with making that determination.  Thus, if a jury determines through its verdict that money damages are owed to a plaintiff, without regard to whether the jury has also awarded pre-judgment interest, post-judgment interest will accrue from the date of the verdict until the judgment is paid.[9] Similarly, if a trial court sitting without a jury renders a judgment for money damages, the rendition of that award in an

---

[9] It should be self-evident that if in confirming the jury's award of damages a trial court properly reduces the award because of a statutory cap or to bring the award into conformance with the ad damnum of the complaint, post-judgment interest shall accrue only on the amount of the award to which the plaintiff is legally entitled.  Nonetheless, the interest shall accrue on that amount from the date of the verdict, not the date of the trial court's order confirming the adjusted amount of the award.

28

order or decree shall fix the date upon which post-judgment interest begins to accrue as to that award, even if the order or decree rendering the award does not conclude the cause or otherwise stays an immediate execution on the judgment.

As a corollary to this rule, it follows that if the verdict, order or decree calls for an award of pre-judgment interest, accrual of that interest will be for the period fixed by the trier of fact until the date of the verdict, order or decree. In effect, where a trier of fact exercises the discretion to award pre-judgment interest, the result is to extend the period for which interest accrues on the damages awarded from the date of the verdict, order or decree back to the date fixed by the trier of fact for the commencement of pre-judgment interest.

In this context, the designation of interest on an award of damages as "pre-judgment" or "post-judgment" is merely a reference to the date, before, upon or after the date of the verdict, order or decree awarding the damages, on which the interest accrued. Thus, where a verdict, order or decree provides for an award of "pre-judgment interest," the effect is simply to impose interest on the award of damages from a date certain prior to the award, rather than as of the date of the award as would otherwise be the case under Code § 8.01-382.

In the present case, the jury's verdict in the First Trial established that interest was to accrue on the compensatory damages awarded therein from the dates specified for each claim until those damages were paid. The circuit court's calculation of the interest due as of the date of the verdict did not fix the amount of interest due. Rather, it merely recited the amount of interest due as a result of the jury's discretionary act in awarding interest to the Joint Venture for the time preceding the entry of the verdict. Thereafter, interest would accrue on the award of compensatory damages as a matter of law, and it was not necessary for the court to recite this in its order. Accordingly, we hold that the circuit court did not err in determining that post-judgment interest accrued on the compensatory damages awarded in the First Trial from the November 6, 2003 jury verdict, rather than from the June 27, 2005 final order, until paid.

We now turn to the question whether the circuit court erred in setting the rate for the post-judgment interest on the compensatory damages awarded in the First Trial at 9% per year. The Joint Venture contends that as to the compensatory damages awarded in the First Trial, the circuit court should have applied the Prompt Payment Act 1% per month rate of interest under Code § 2.2-4352, the rate of interest awarded by the jury. UOSA responds that the 1% monthly rate of interest cannot be

applied as post-judgment interest on the compensatory damages for the various breaches of the December 1996 contract. UOSA maintains that this is so because the contract contained no provision for interest, the 1% monthly rate was established by the Prompt Payment Act, and the jury's verdict applied that rate only for pre-judgment interest. Accordingly, UOSA contends that the circuit court should have looked to the third sentence of Code § 8.01-382 and applied "the judgment rate of interest as provided for in § 6.1-330.54" in effect on the date of the final order.

UOSA's contention is in error for two reasons. First, the Joint Venture's right to seek interest of up to 1% per month under the Prompt Payment Act, while not recited as a term in the December 1996 contract, was a term to be implied in the contract under Code § 2.2-4352, and the jury was so instructed. Thus, contrary to UOSA's contention, the 1% per month rate of interest awarded by the jury in the November 6, 2003 verdict was a contract rate of interest.

Second, the jury found that the compensatory damages were subject to the Prompt Payment Act rate of interest, and, as we have just demonstrated, under the provisions of the first and second sentences of Code § 8.01-382 that rate of interest found by the jury was to apply "until such principal sum be paid," not merely as pre-judgment interest. Accordingly, we hold that the

circuit court erred in not applying the 1% per month rate of interest awarded by the jury on the compensatory damages in the First Trial as the rate of post-judgment interest on those damages from the date of the jury's verdict until those damages are paid.[10]

For these reasons, we will reverse the circuit court's award of $1,162,805 in post-judgment interest on the compensatory damages of the First Trial, and we will remand the case to the circuit court for a recalculation of the interest actually due on those damages from November 6, 2003 to May 8, 2006 at the rate of 1% per month.

Accrual of Post-Judgment Interest on Pre-Judgment Interest

UOSA contends that the circuit court erred in determining that post-judgment interest was to accrue not only on the compensatory damages awarded by the January 15, 2004 and June 27, 2005 orders, but on the pre-judgment interest awarded in those orders as well.  Again relying on Code § 8.01-382, UOSA contends that post-judgment interest applies only to "any principal sum awarded."  UOSA, further relying on an Opinion of

---

[10] Because we hold that Joint Venture is entitled to post-judgment interest of 1% per month on the compensatory damages from the First Trial, we need not address UOSA's additional assignment of error in which it contended that the circuit court should have awarded only the statutory rate of interest in effect on June 27, 2005, or in the alternative, a variable rate of interest based on changes in the statutory rate of interest.

32

the Attorney General, asserts that the "principal sum awarded" in this case is limited to the compensatory damages awarded by the jury in the First Trial and the calculation by the circuit court of compensatory damages for the material breaches in the Second Trial. Thus, UOSA maintains that post-judgment interest is not to be applied to amounts awarded for pre-judgment interest because these are not part of the "principal sum awarded." See 2004 Op. Att'y Gen. 26, 28. UOSA further asserts that this interpretation of the statute is correct because the plain and ordinary meaning of "principal" as used in this context, refers to "[t]he amount of a debt . . . not including interest." Black's Law Dictionary, 1231 (8th ed. 2004).

The Joint Venture responds that the circuit court correctly ruled that the "principal sum awarded" in a trial is the total amount of the damages awarded, including any award of pre-judgment interest on compensatory damages. The Joint Venture contends that UOSA's reliance on the Opinion of the Attorney General is misplaced because that opinion failed to take into account multiple decisions of this Court which establish that pre-judgment interest is an element of the damages and, thus, is part of the "principal sum awarded" to a plaintiff.

While we agree with the Joint Venture that pre-judgment interest may be sought by a plaintiff as part of the damages it seeks to recover, see, e.g., Shepard v. Capitol Foundry of Va.,

33

Inc., 262 Va. 715, 722, 554 S.E.2d 72, 76 (2001), we do not agree that an award of pre-judgment interest is part of the "principal sum awarded" as that term is used in Code § 8.01-382. To the contrary, we agree with UOSA that the "principal sum awarded" as contemplated by Code § 8.01-382 is that element of the plaintiff's damages that compensates the plaintiff for the actual harm sustained, but not any pre-judgment interest on those damages that the trier of fact might also award. Rather, as we have just resolved, supra, pre-judgment interest is merely a discretionary award establishing the interest applied to an award of damages to a date certain prior to the entry of the verdict, order or decree awarding such damages. Accordingly, we hold that the circuit court erred in determining that post-judgment interest would accrue on that portion of the damages awarded in the First Trial and the Second Trial that constituted pre-judgment interest on the principal sums awarded.

For these reasons, we will reverse the circuit court's award of $412,573 in post-judgment interest on the pre-judgment interest of the First Trial and the award of $75,009 in post-judgment interest on the pre-judgment interest of the Second Trial.

### UOSA's Allocation of the May 8, 2006 Payment

The Joint Venture contends that the circuit court erred in its determination that UOSA's letter of May 10, 2006 reflecting

34

its calculation of the payment made on May 8, 2006 was a timely directive as to the allocation of that payment. The Joint Venture contends that because UOSA wired the payment to the Joint Venture's counsel without any instructions on how the payment was to be applied, the subsequent letter and its attached calculations were insufficient to act as a directive of allocation because they were untimely.

UOSA responds that a debtor has the right to specify how a payment is to be applied to the debt. By promptly responding to the Joint Venture's request to explain the manner in which UOSA had calculated the amount of the debt, UOSA contends it made a contemporaneous directive to allocate the payment in accord with the amounts it asserted were due on the various elements of the two judgments and the interest thereon. Because the Joint Venture did not initially dispute the amount due or indicate that it would use its own calculation to determine the allocation of the payment before UOSA indicated its basis for calculating the different elements of the judgments, and by consequence allocate the payment in those amounts, UOSA contends that the circuit court correctly ruled that the May 10, 2006 letter constituted a timely directive to allocate the payment in accord with UOSA's calculations.

The principles of law that govern the right to direct the application of a payment by a debtor to a debt or debts owed to

a creditor are as ancient and venerable as the principle that natural justice requires the debtor to pay interest to the creditor until the debt is paid. The first of these principles is that where there is but a single debt between debtor and creditor, no directive to allocate is necessary by the debtor, as "[t]he very idea of election supposes something to elect between." Donally v. Wilson, 32 Va. (5 Leigh) 329, 331 (1834). But if the debt owed has different elements of principal and interest, "[t]he debtor . . . has a right to say whether [the payment] shall be applied to the principal or to the interest of the debt due," Howard v. McCall, 62 Va. (21 Gratt.) 205, 209 (1871), or if more than one debt is owed between the parties, the debtor "may direct the application of [the payment], because it is his: if he gives no direction, the creditor may apply it to which of the two debts he chooses." Donally, 32 Va. (5 Leigh) at 331. Inherent in these decisions is the concept that a debtor has, at least initially, the right to have a partial payment applied to his debts in the manner most advantageous to him if he timely elects to do so, absent any applicable statutory or contractual provision to the contrary.

Similarly, the creditor has the right to allocate the payment to his advantage if the debtor fails to exercise this election, but that right is not absolute. As this Court observed in one of its first cases, "if the debtor neglect[s] to

make the application at the time of payment, the election is then cast upon the creditor, yet it is incumbent upon the latter, in such a case, to make a recent application, by entries in his books or papers, and not to keep parties and securities in suspense, changing their situation, from time to time, as his interest, governed by events, might dictate." Hill v. Southerland, 1 Va. (1 Wash.) 128, 133 (1792).

In Chapman v. Commonwealth, 66 Va. (25 Gratt.) 721 (1875), we summarized the law with regard to allocation of a partial payment among several debts:

> A payment by a debtor who owes several debts to a creditor, is to be applied to one or the other of the debts; first, as the debtor may direct at or before the time of making such payment; and such direction may be given expressly or by implication. Secondly, if the debtor give no such direction then the creditor may make the application, according to his pleasure; and he may make it, either at the time of such payment, or afterwards, before the commencement of any controversy on the subject.

Id. at 750 (emphasis added).[11]

It is not contested that the attachment to UOSA's letter of May 10, 2006 was an implicit attempt to allocate the May 8, 2006 payment according to UOSA's calculation of the judgment debt.

---

[11] The application of these principles in the present case impacts whether UOSA's payment to the Joint Venture is to be applied to the satisfaction of the compensatory damages awarded in the First Trial and the Second Trial so as to prevent the continued accrual of post-judgment interest thereon.

Moreover, in the May 16, 2006 letter from its counsel, the Joint Venture made an express attempt to allocate the May 8, 2006 payment to its advantage. Thus, the crux of the issue is whether the circuit court erred in ruling that the May 10, 2006 letter was "essentially contemporaneous" with the May 8, 2006 payment such that it was a directive of the debtor made "at or before the time of making such payment," and, if not, whether the Joint Venture's attempt to allocate the payment to its advantage occurred "before the commencement of any controversy on the subject."

The circumstances surrounding UOSA's tendering of payment on its judgment debt to the Joint Venture are not in dispute. The funds were wired to the account of the Joint Venture's counsel on May 8, 2006. At 3:46 P.M. on that day, counsel for UOSA sent an email to counsel for the Joint Venture asking for him to "[p]lease verify that you have received the funds." Counsel for the Joint Venture responded to this email at 5:10 P.M. requesting UOSA's counsel to "please provide the calculation of the amount paid, including the interest calculations, so that we can understand how the amount was determined." (Emphasis added.) This email is a de facto acknowledgement that the payment had been received, but also evidenced that the judgment creditor did not yet accept that the debt was fully satisfied.

UOSA's counsel responded by mailing the May 10, 2006 letter and its attached exhibit and sending copies of these to counsel for the Joint Venture by telefacsimile. That letter expressly stated the position of UOSA that the judgment debt was fully satisfied and, by implication, that it would contest any claim by the Joint Venture that additional moneys were due. The Joint Venture responded to this communication in the May 16, 2006 letter from its counsel with its own calculation of the judgment debt, asserting that the May 8, 2006 payment was not sufficient to cover that debt, and purporting to allocate the "partial payment" in a manner advantageous to the Joint Venture.

In light of the sequence of events between May 8 and May 16, 2006, we find that the record is abundantly clear that UOSA did not attempt to make an allocation of its payment, either expressly or by implication, "at or before the time of making such payment." Thus, any action taken by UOSA thereafter to justify its calculation of that payment in response to the query from the Joint Venture cannot be treated as a timely allocation because the payment had already been tendered and accepted. Accordingly, we hold that the circuit court erred in finding that the May 10, 2006 letter was an "essentially contemporaneous" directive to allocate the May 8, 2006 payment according to the calculations in the attachment to the letter.

On brief, the Joint Venture contends that its calculation of the judgment debt, as expressed in the exhibit attached to its May 16, 2006 letter to counsel for UOSA, was a timely allocation of the May 8, 2006 payment to the debt. However, because the circuit court ruled that UOSA's May 10, 2006 calculation constituted a timely allocation by the debtor, the court never reached the question whether the Joint Venture's calculation would have constituted a timely allocation by the creditor in the absence of an allocation by the debtor. Thus, the court was not called upon to decide whether the Joint Venture made its allocation "before the commencement of any controversy on the subject." Moreover, in light of our holding that certain of the awards made by the circuit court were in error, neither of the calculations advanced by the parties regarding their alleged allocations will be germane to the judgment debt once it has been recalculated in accord with the views expressed herein.

Accordingly, we will remand the case to the circuit court with direction that it first recalculate the amount of the judgment debt as of May 8, 2006. The court will then determine whether the Joint Venture's May 16, 2006 letter constitutes a timely allocation of the May 8, 2006 payment, and, if so, whether and how that allocation may be applied to the recalculated debt. If the court determines that there was no

timely allocation by the Joint Venture, or that the calculations of the May 16, 2006 letter, though a timely allocation, cannot practicably be applied to the recalculated debt, then the court shall apply the May 8, 2006 payment to the recalculated debt in accord with the principle of law that, in the absence of an effective allocation by either debtor or creditor, the courts will apply the payment to the debts in order of age, starting with the oldest. Northern Virginia Savings & Loan Ass'n v. J. B. Kendall Co., 205 Va. 136, 145, 135 S.E.2d 178, 185 (1964); Pope v. Transparent Ice Co., 91 Va. 79, 85, 20 S.E. 940, 942 (1895).

Failure to Grant Motion for Satisfaction of the Judgment

As we stated at the outset, the burden of proof as to entitlement to relief under Code § 8.01-455 rests with the judgment debtor, here UOSA, asserting that the judgment debt has been paid and should be marked satisfied. Leasing Service Corp, 243 Va. at 444, 416 S.E.2d at 441. Because UOSA has not prevailed in this Court on the issue of whether interest was to accrue during the period between November 6, 2003 and June 27, 2005 and the Joint Venture has prevailed on the issue that post-judgment interest on the compensatory damages from the First Trial accrued at the rate of 1% per month, it is clear that UOSA's contention that it has fully satisfied the judgment debt is no longer tenable. Accordingly, we need not address further

41

UOSA's assignment of error asserting that the circuit court erred in not granting UOSA's motion for satisfaction of the judgment. UOSA is not yet entitled to such relief.

CONCLUSION

In summary, we have determined that: (1) the circuit court had jurisdiction to determine what interest was due to the Joint Venture under the court's June 27, 2005 judgment pursuant to UOSA's motion for satisfaction of that judgment; (2) the circuit court did not err in determining that interest was to accrue on the compensatory damages awarded in the First Trial between November 6, 2003 and June 27, 2005, but it erred in setting the rate of that interest at 9% per year, rather than the rate of 1% per month provided for in the jury's verdict; (3) the circuit court erred in determining that post-judgment interest was to accrue on the pre-judgment interest awarded in the First Trial and the Second Trial; (4) the circuit court erred in determining that UOSA made a timely allocation of the May 8, 2006 payment on the judgment debt; and, (5) the circuit court did not err in denying UOSA's motion for satisfaction of the judgment.

Because we have determined that the circuit court erred in awarding post-judgment interest on the pre-judgment interest and also erred in not applying the 1% per month rate of interest to calculate the post-judgment interest on the compensatory damages awarded by the jury in the First Trial, we will remand the case

42

to the circuit court in order that, consistent with the views expressed in this opinion, the court can make a proper calculation of the judgment debt, determine the proper allocation of the May 8, 2006 payment to that debt, and determine the remaining balance due to the Joint Venture.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.

JUSTICE KINSER, with whom JUSTICE AGEE joins, concurring.

I agree with the majority's conclusions on the issues before us, but I write separately to discuss in more detail the provisions of Code § 8.01-382 in relation to the concepts of "pre-judgment interest" and "post-judgment interest." I do so because I disagree with the majority's use of the labels "pre-judgment interest" and "post-judgment interest" in the context of Code § 8.01-382 and the implication that, when a trier of fact provides for interest on the principal sum awarded and fixes the period at which the interest commences, such interest consists of only "pre-judgment interest."

The provisions of Code § 8.01-382 do not include the terms "pre-judgment interest" or "post-judgment interest." Instead, the statute addresses two scenarios with regard to the accrual of interest on a jury verdict or judgment of a trial court, when the trier of fact elects to provide for interest on any

43

principal sum awarded and when it chooses not to do so.  The first two sentences of Code § 8.01-382 address the initial circumstance, and the third sentence pertains to the latter.

The first sentence of Code § 8.01-382 allows a jury or a court, sitting without a jury, to "provide for interest on any principal sum awarded . . . and [to] fix the period at which the interest shall commence."  Contrary to the labels used by the majority, such interest is not just "pre-judgment interest" that ceases to accrue on the date of the jury verdict or court's judgment.  The time which the trier of fact may fix for interest to commence is not limited by the statute and thus may be before, at or after the rendering of judgment.  The second sentence of the statute directs that, when the trier of fact does provide for such interest, the judgment or decree entered "shall provide for such interest until such principal sum be paid."  Code § 8.01-382.  If the period thus fixed for the commencement of interest predates the jury verdict or judgment of the court, the interest that accrues before the date of the jury verdict or court's judgment is commonly referred to as "pre-judgment interest," and the interest accruing after that date is commonly denominated as "post-judgment interest." However, the trier of fact could fix the commencement of the running of interest, including the rate of interest, at or after judgment, which would also commonly be referred to as "post-

44

judgment interest," but under the plain terms of Code § 8.01-382 would not be controlled by Code § 6.1-330.54.

The third sentence of Code § 8.01-382 addresses the situation when a jury or a court, sitting without a jury, elects not to provide for any interest on the principal sum awarded. It directs that, when "a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded or jury verdict shall bear interest at the judgment rate of interest as provided for in § 6.1-330.54 from its date of entry or from the date that the jury verdict was rendered." Code § 8.01-382. In other words, when a jury or court does not provide for interest on any principal sum awarded, the judgment, as a matter of law, will nevertheless bear interest at the rate set forth in Code § 6.1-330.54 from the date of either the jury verdict or entry of the judgment or decree. See Board of Supervisors v. Safeco Ins. Co., 226 Va. 329, 339, 310 S.E.2d 445, 451 (1983) (under Code § 8.01-382, if the fact-finder does not provide for interest on any principal sum awarded, "the judgment bears interest at the judgment rate from date of entry"). Obviously, interest in this circumstance accrues only during the "post-judgment" period.

In the First Trial, the jury, acting pursuant to the first sentence of Code § 8.01-382, provided for interest on the various principal sums awarded to the Joint Venture, fixed the

45

rate at one percent, and set the date from which the interest commenced to accrue on each principal sum awarded. All those dates preceded the November 6, 2003 jury verdict. Thus, the jury awarded the Joint Venture interest that commenced to accrue during the "pre-judgment" period and continued to accrue until UOSA paid the principal sums awarded to the Joint Venture. In accordance with the jury verdict, the circuit court, in its orders of November 19, 2003, and January 15, 2004 (which was incorporated into the final order of June 27, 2005), calculated the amount of interest that had accrued on each principal sum awarded from the date the one percent began to accrue through November 6, 2003, the date of the jury verdict. The total accrued interest as of that date was $1,832,652.

When UOSA filed its motion for satisfaction of the judgment pursuant to Code § 8.01-455, the circuit court decided, among other things, at what rate interest continued to accrue on the principal sums awarded after November 6, 2003. In answering that question, the circuit court concluded that the January 15, 2004 order did not comport with the second sentence of Code § 8.01-382 because that order did not specifically provide for the one percent interest to continue to accrue until UOSA paid the principal sums awarded to the Joint Venture. In other words, the court decided that the January 15, 2004 order did not provide for interest and was therefore "squarely on point with

46

the third sentence" of Code § 8.01-382.  For that reason, the circuit court held that interest accrued after November 6, 2003 at the rate set forth in Code § 6.1-330.54.

In my view, the circuit court failed to correctly apply its January 15, 2004 order.  By setting forth in that order the one percent rate of interest and fixing the date at which such interest began to accrue on each principal sum, all in accordance with the jury verdict, the circuit court's order provided for the continued accrual of that interest until UOSA paid the various principal sums as a matter of law.  Stated differently, the order did not fail to provide for interest, and the judgment, therefore, did not fall within the ambit of the third sentence of Code § 8.01-382.[*]

> Thus, I conclude that the Joint Venture was entitled
> to interest on the principal sums awarded in the First
> Trial at the rate of one percent per month from the
> date fixed by the jury for the commencement of the
> interest on each principal sum until such sum was
> paid.  I recognize that the majority reaches the same
> conclusion, but in my view, its use of the labels
> "pre-judgment" and "post-judgment" when discussing
> interest provided by the trier of fact pursuant to the

---

[*] [1] If the circuit court's January 15, 2004 order had failed to provide for the interest awarded by the jury in the First Trial until UOSA paid the principal sums, but instead had fixed the amount of interest the Joint Venture was entitled to receive, such an order would not have been in accordance with the jury verdict and the requirements of Code § 8.01-382.  The Joint Venture would have been required to raise that error on direct appeal.  To do so now under the guise of responding to UOSA's motion for satisfaction of judgment under Code § 8.01-455 would violate the requirements of Rule 1:1.

47

first two sentences of Code § 8.01-382 is confusing because, under this statute, such interest necessarily accrues until the principal sum is paid.

I further conclude that the circuit court's failure to interpret correctly its January 15, 2004 order and the provisions of Code § 8.01-382 led to its erroneous award of "post-judgment interest" on "pre-judgment interest." As the majority noted, a plaintiff may seek as part of its damages an award of interest commencing on a date prior to a jury verdict or court's judgment, i.e. "pre-judgment interest." See Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799, 801 (1994) (the purpose of pre-judgment interest is to make a plaintiff whole and is part of the damages a plaintiff may seek to recover). But, when the trier of fact provides for interest on any principal sum awarded, that interest continues to accrue until the principal sum is paid. Code § 8.01-382. It is not a lump sum award of damages, nor does it consist of only "pre-judgment interest," as the majority suggests. Thus, it compensates a plaintiff for the lost use of its money from the date fixed by the trier of fact for the commencement of the interest until the principal sum is paid. Stated differently, interest provided pursuant to the first sentence of Code § 8.01-382 compensates a plaintiff " 'for the loss sustained by not receiving the amount to which he was entitled at the time he was

48

entitled to receive it.' " <u>Marks v. Sanzo</u>, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (quoting <u>Employer-Teamsters Joint Council No. 84 v. Weatherall Concrete</u>, 468 F.Supp. 1167, 1171 (S.D. W.Va. 1979)).  But, a plaintiff is entitled to be compensated for that particular loss only once.  By awarding "post-judgment interest" on "pre-judgment interest," the circuit court, however, compensated the Joint Venture twice for that loss during the "pre-judgment" period.

Furthermore, the term "principal" is defined as "[t]he amount of a debt . . . not including interest."  <u>Black's Law Dictionary</u>, 1231 (8th ed. 2004).  Thus, I conclude that the phrase "principal sum awarded" as used in Code § 8.01-382 does not include "pre-judgment interest" provided by a trier of fact.  Instead, the "principal sum awarded" refers to the amount that a plaintiff was initially entitled to receive as damages from the party in breach of some obligation or duty and is the monetary figure on which interest, if provided for by the trier of fact under Code § 8.01-382, accrues.

For these reasons, I respectfully concur.