COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Chaney, Raphael and Callins
Argued at Richmond, Virginia


STEPHEN MONCRIEFFE

v.       Record No. 0342-22-2

ADAM J. DENO, D/B/A LAW OFFICE OF
  ADAM DENO

OPINION BY
JUDGE STUART A. RAPHAEL
JANUARY 24, 2023


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Stephen B. Moncrieffe, *pro se*.

(Adam J. Deno, on brief), *pro se*.  Appellee submitting on brief.


Appellant Stephen Moncrieffe hired appellee Adam J. Deno to represent him in a civil litigation matter.  Moncrieffe signed a contingent-fee agreement under which Deno would be paid one-third of any recovery obtained by settlement and 40% if the case were tried.  After Deno settled the case and Moncrieffe refused to pay the fee, this litigation ensued.  Moncrieffe appeals the circuit court's judgment for Deno.  He claims, among other things, that Deno failed to prove that the one-third contingency fee was reasonable.  Both parties also challenge aspects of the circuit court's award of prejudgment and post-judgment interest.  Finding the evidence sufficient to support the judgment, however, we affirm.

BACKGROUND

Deno and Moncrieffe gave conflicting testimony in the bench trial below.  But because Deno prevailed, we view the facts in light most favorable to him.  *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 324 (2020).

Moncrieffe retained Deno to represent him in a civil-litigation matter. Both are licensed Virginia attorneys. Moncrieffe was not only Deno's client for this engagement; he was also Deno's supervisor at the entity where they worked.[1] They signed a one-page engagement letter dated April 22, 2020. Moncrieffe initialed the paragraph in which he agreed "to pay for legal services rendered as follows: . . . One-third (1/3 or 33.3%) of any recovery by settlement or agreement. 40% of any recovery by court order or final verdict."

The civil case that Deno undertook had been pending for nearly a year in the Circuit Court of the City of Richmond and had not yet been served. After entering his appearance for Moncrieffe, Deno "started communications with [opposing] counsel, did a lot of background investigation about the facts of the case, did legal research, [and engaged in] a long series of e-mails and phone calls." Moncrieffe participated actively in the matter, and the two collaborated when communicating with the other side.

Deno's efforts resulted in a confidential settlement in which Moncrieffe received $27,750. Deno said that, "typically," he would deposit a settlement check in his trust account, take out his fee, and disburse the remaining funds to the client. But noting that Moncrieffe was his "supervisor at the time, and a colleague," Deno instructed the opposing party to make the settlement check payable directly to Moncrieffe. Deno delivered the check to Moncrieffe on August 8, 2020.

But when Deno asked to be paid one-third of the settlement proceeds, Moncrieffe refused and claimed surprise at the amount. Moncrieffe said he owed a much smaller percentage, pointing to his agreement with Deno for a different matter from the month before. The letters for the two engagements had the same terms, but the contingent fee for the earlier engagement was only 7.5%. Moncrieffe claimed that, for the Richmond litigation matter, Deno had "placed [the

---

[1] The record does not disclose the name of the entity.

agreement] on my desk with the words, it's the same as the last one.  I signed it immediately.

[Deno] knew that I did not read it."  Moncrieffe testified that he "didn't think that [the contract]

would change from seven and a half to thirty-three and a third."

After the parties failed to resolve their differences, Deno filed a warrant-in-debt in the

General District Court of Hanover County, where he recovered a judgment against Moncrieffe of

$9,157.50, plus interest at 6% from August 8, 2020, until paid.  Moncrieffe appealed.

At the bench trial that followed in the circuit court, Deno disputed Moncrieffe's version

of events, including Moncrieffe's suggestion that Deno had duped him into signing the

agreement without reading it.  Deno testified that, because Moncrieffe was his colleague and

supervisor, Deno "took out a lot of the usual language" from his standard engagement letter.

Deno said they discussed the one-third contingent-fee contract before signing it and that

Moncrieffe "basically had told me to go ahead and charge a third."  He described their agreement

about the one-third fee as "explicit."  According to Deno, Moncrieffe said that the legal case was

"crap," so Deno should "[g]o ahead and charge a F'ing third."  Deno undertook the case knowing

that it "was not particularly strong."

After denying Moncrieffe's motions to strike, the trial court found for Deno and awarded

him $9,157.50, with interest of 6% from April 19, 2021, until paid.  Moncrieffe noted a timely

appeal.

ANALYSIS

When a trial court renders judgment after a bench trial, we cannot set aside that judgment

as contrary to the evidence "unless it appears from the evidence that such judgment is plainly

wrong or without evidence to support it."  Code § 8.01-680.  When judges sit as factfinders, "no

less than jurors," we give their determinations "the highest degree of appellate deference."

*Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017) (quoting *Forest Lakes Cmty.*

*Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 117 (2017)).  We likewise "view the evidence and all reasonable inferences drawn from it in the light most favorable to . . . the prevailing party at trial."  *Id.* at 159.  In assessing whether the evidence supported the trial court's decision, "our appellate review 'is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'"  *Minh Duy Du v. Commonwealth*, 292 Va. 555, 566 (2016) (quoting *Perry v. Commonwealth*, 280 Va. 572, 580 (2010)).

Moncrieffe raises nine assignments of error to the judgment below.  Deno counters with two assignments of cross-error.  Their claims fall into two categories: whether Deno could enforce a one-third contingency fee; and whether there was error in the award of prejudgment or post-judgment interest.

A.  *The circuit court did not err in enforcing the contingent-fee contract.*

Eight of Moncrieffe's assignments of error attack the circuit court's decision to award a one-third contingency fee.  We agree with Moncrieffe that Deno bore the burden of proving the reasonableness of the fee.  But we find there was enough evidence for the trial court to conclude that Deno carried his burden, and we reject Moncrieffe's remaining contract defenses.

1.  *The plaintiff bears the burden of proving the reasonableness of a contingency fee.*

Determining who bears the burden of proving a claim or defense presents a question of law that we review de novo.  *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 47-48 (2020).

We agree with Moncrieffe that a lawyer who sues his client to enforce a contingent-fee contract is generally not entitled to a presumption that the percentage charged is reasonable.  Our Supreme Court has consistently held that "[a] prevailing party entitled by law to an award of attorney fees has the burden of proving 'that the requested fees are reasonable and that they were necessary.'"  *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 46 (2022) (quoting *West Square, L.L.C. v. Commc'n Techs., Inc.*, 274 Va. 425, 433 (2007)).  "A contingency fee,

- 4 -

like any other fee a lawyer earns when representing a client, must be reasonable." *Portsmouth 2175*, 298 Va. at 335 n.6; Va. Legal Ethics Op. 1606 (2016) ("All fees must be reasonable."); Restatement (Third) of the Law Governing Lawyers § 34 (2000) ("A lawyer may not charge a fee larger than is reasonable in the circumstances or that is prohibited by law.").

We disagree with Moncrieffe's suggestion, however, that the circuit court favored Deno with the presumption that his one-third percentage was reasonable. The trial transcript does not corroborate that claim. Deno never requested such a presumption. And we find nothing in the record to suggest that the circuit court relieved Deno of his burden of proof.

### 2. *The evidence supported the reasonableness of Deno's fee (Assignments of Error 3-5).*

Our Supreme Court has identified various factors that trial courts may consider when determining the reasonableness of the attorney fees claimed.

> These factors, which do not constitute an exclusive list, include:
> "(1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate."

*Portsmouth 2175*, 298 Va. at 333 (quoting *Denton v. Browntown Valley Assocs.*, 294 Va. 76, 88 (2017)). The "fact-finder is not required to consider all of the factors . . . in every situation, and . . . 'particular factors may have added or lessened significance depending on the circumstances of each case.'" *Id.* at 334 (quoting *West Square, L.L.C.*, 274 Va. at 434).

But the trial court's analysis must "take into account the fact that the lawyer is operating under a contingency fee." *Id.* In *Portsmouth 2175*, for instance, the Court upheld the reasonableness of a 20% contingent fee even though the plaintiff failed to adduce evidence "concerning factors (1), (2), (3), (4), (5), and (7)," and despite "that the attorney acknowledged that he kept no records of his time spent on the case." *Id.* The Court described some of the

factors that could render a contingent fee unreasonable, such as if it imposed "an excessively high percentage of the recovery, far beyond established norms." *Id.* But the contingent fee there did not exceed the 20% cap allowed in proceedings to recover delinquent taxes. *Id.* at 335. The Court said that "[a] contingency fee at or below this legislatively sanctioned cap is presumptively reasonable." *Id.*[2] The lawyer "testified that the 20 percent contingency fee is standard for this type of work." *Id.* at 319-20. He also testified to the work he performed "and the risk involved." *Id.* at 335. Given those facts, the Court found no abuse of discretion in the trial court's conclusion that the fee charged was reasonable. *Id.*

Unlike *Portsmouth 2175*, this case involves no statutory cap on contingent fees to suggest that a lower percentage is "presumptively reasonable." 298 Va. at 335. And unlike the lawyer there, Deno did not testify that a one-third contingent fee "is standard" for the type of work he performed here. *Id.* at 320.

Still, taking the facts in the light most favorable to Deno, *id.* at 324, we find enough evidence to show that his one-third contingent fee was reasonable. First, Deno testified that Moncrieffe himself proposed the one-third share, a claim corroborated by Deno's email to Moncrieffe after the fee dispute arose. Of course, the fact that the client proposed the percentage does not automatically make it reasonable. "[C]ontingent-fee clients are often unsophisticated and inexperienced users of legal services, and their financial position might leave them little choice but to accept whatever contingent-fee arrangements prevail in the locality." Restatement (Third) of the Law Governing Lawyers, *supra*, § 35 cmt. b. But Moncrieffe was both a

---

[2] *Cf. Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002) (holding that a lawyer operating under a contingent-fee agreement to pursue Social Security benefits for his client must prove the reasonableness of the contingent fee claimed, even when the percentage does not exceed the 25% statutory cap in 42 U.S.C. § 406(b); "[w]ithin the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered").

practicing Virginia lawyer and Deno's work supervisor.[3]  When the client is a sophisticated provider or purchaser of legal services who negotiates from a position of strength when hiring counsel—like Moncrieffe—courts should be loath to second-guess the reasonableness of the contingent fee they agreed upon.

Second, both Moncrieffe and Deno thought that Moncrieffe's case was weak.  Deno testified that Moncrieffe offered to pay more than the 7.5% percentage used in their prior dealings because this new case was "crap."  The case had been pending for nearly a year and was about to be dismissed.  By contrast, the previous case in which Deno had charged only 7.5% "was much stronger" and had a "much higher degree of recovery."

Third, Deno testified about the efforts he put into the case to achieve a confidential settlement.  Those efforts enabled Deno to negotiate a settlement before the then-pending complaint had to be served on the opposing party.

Finally, the circumstances here do not resemble those cases in which the Restatement has warned that a contingent fee would be unreasonable:

> those in which there was a high likelihood of substantial recovery by trial or settlement, so that the lawyer bore little risk of nonpayment; and those in which the client's recovery was likely to be so large that the lawyer's fee would clearly exceed the sum appropriate to pay for services performed and risks assumed.

Restatement (Third) of the Law Governing Lawyers, *supra*, § 35 cmt. c.  Given that Moncrieffe and Deno both thought that the case was hard to win, a one-third fee of a $27,000 recovery involves neither a disproportionate numerator nor an oversized denominator.

Moncrieffe testified that, according to his calculations, Deno spent only "six to seven hours of time on this case," a figure Moncrieffe claimed to know because he was Deno's

---

[3] The trial judge remarked that Moncrieffe and Deno had "always appeared together before."

supervisor. Moncrieffe complains that the $9,157.50 fee awarded by the trial court resulted in a windfall to Deno of more than $1,300 an hour.

But that simple math is not the litmus test for determining whether a contingent fee is reasonable. "A contingent fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation." Restatement (Third) of the Law Governing Lawyers, *supra*, § 35 cmt. c. That is so because "contingency fee agreements transfer a significant portion of the risk of loss to the attorneys taking a case." *Portsmouth 2175*, 298 Va. at 334 (quoting *In re Abrams*, 605 F.3d 238, 246 (4th Cir. 2010)). "A lawyer might expend considerable effort" only to recover nothing. *Id.* Or "a lawyer may expend minimal time on a case and obtain a full recovery." *Id.*[4]

As it turned out, Deno negotiated a settlement satisfactory to Moncrieffe without the full-bore litigation they had expected. The circuit court thus had a sound basis in fact to conclude that Deno provided real value to Moncrieffe while assuming a significant risk of getting nothing. As in *Portsmouth 2175*, then, the trial court here "committed no abuse of discretion" in approving the contingent-fee recovery. *Id.* at 335.

### 3. Moncrieffe has not shown that Deno's noncompliance with Rule 1.5(c) renders the contingent fee unenforceable (Assignments of Error 2, 6).

Two of Moncrieffe's assignments of error claim that the circuit court should not have enforced the contingent-fee agreement because Deno violated Rule 1.5 of the Virginia Rules of Professional Conduct. Va. Sup. Ct. R., Part 6, § II, R. 1.5. That rule permits a lawyer to contract

---

[4] *See generally* Restatement (Third) of the Law Governing Lawyers, *supra*, § 35 cmt. b ("Contingent-fee arrangements perform three valuable functions. First, they enable persons who could not otherwise afford counsel to assert their rights, paying their lawyers only if the assertion succeeds. Second, contingent fees give lawyers an additional incentive to seek their clients' success and to encourage only those clients with claims having a substantial likelihood of succeeding. Third, such fees enable a client to share the risk of losing with a lawyer, who is usually better able to assess the risk and to bear it by undertaking similar arrangements in other cases (*cf.* Restatement Second, Agency § 445).").

for a fee that is "contingent on the outcome of the matter for which the service is rendered," except in criminal cases and in most domestic-relations matters. Rule 1.5(c)-(d). Rule 1.5(c) requires that the agreement not only be "in writing" but state, among other things, the "expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated." Moncrieffe complains that while the engagement letter here was in writing, Deno failed to identify the expenses to be deducted and whether those expenses would be deducted before or after the one-third fee was applied. He also claims that Deno violated the last sentence of Rule 1.5(c), which requires that "[u]pon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

Moncrieffe does not persuade us that Deno's noncompliance with those requirements renders the contingent fee unenforceable. For one thing, Moncrieffe does not claim that Deno improperly calculated his one-third fee. More importantly, Moncrieffe has failed to cite any authority that noncompliance with the procedural requirements of Rule 1.5(c) renders the contingent-fee contract void, voidable, or otherwise unenforceable. While we will briefly discuss the question that Moncrieffe's argument presents, we ultimately decline to resolve it because the matter has not been adequately briefed.

Deno points to the Preamble of the Virginia Rules of Professional Conduct. The Preamble states that, while the "[f]ailure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process," the "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." The Preamble gives this nuanced explanation for that distinction:

> The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary

agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Va. Sup. Ct. R., Part 6, § 2, Preamble.

Our Supreme Court relied on that same language in *Meuse v. Henry*, 296 Va. 164 (2018). *Meuse* held that a lawyer's violation of Rule 1.8's requirement to obtain the client's *written* consent to the waiver of a conflict did not invalidate the transaction when the client had otherwise provided informed consent. *Id.* 185-86 & n.5. The Court said that, to hold the transaction invalid "would undermine the well-established boundary between the disciplinary objectives of the Rules of Professional Conduct and the remedial objectives of common and statutory civil law." *Id.* at 186 n.5.

Although Deno suggests that we extend *Meuse*'s reasoning from Rule 1.8 to 1.5(c), we decline to do so because the issue has not been adequately briefed. Courts in other States are divided on whether a contingent fee agreement is enforceable when it "is not in writing or otherwise not in compliance with rules governing the form and requisites for such an agreement." 1 Robert L. Rossi, *Attorneys' Fees* § 3:32 & nn.13-15 (3d ed. 2022) (collecting cases). This is an important question of first impression in Virginia that should be decided only after full briefing. Rule 5A:20(e) requires that the appellant's opening brief include "principles of law and authorities" supporting each assignment of error. Because Moncrieffe's failure to cite any supporting legal authority is "significant," we treat his argument as defaulted. *Conley v. Commonwealth*, 74 Va. App. 658, 681-82 (2022).

*4. Moncrieffe's remaining defenses lack merit (Assignments of Error 1, 7-8).*

We find no merit to Moncrieffe's remaining contract defenses. We reject his claim (Assignment of Error 1) that Deno could not bring suit for breach of contract because Deno "never issued an invoice." To the extent this argument depends on the last sentence of Rule of Professional Conduct 1.5(c), we just concluded that Moncrieffe defaulted that argument under Rule 5A:20(e). The balance of Moncrieffe's argument posits a standalone requirement that sending an invoice is required as a prerequisite to suing because, as Moncrieffe puts it, a contract "without a payment timing provision is payable upon demand for payment within a reasonable time."

We assume that there might be some circumstances in which submitting an invoice is necessary to trigger the duty to pay, such as when a contract makes the invoice requirement mandatory. *Cf. Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 278 Va. 444, 470-71 (2009) (finding no abuse of discretion in trial court's decision to grant prejudgment interest from the date that payment was due under the contract, despite the failure to send an invoice or to make a demand for payment). But Deno's engagement letter imposed no such requirement.

What is more, requiring an invoice here would have been a useless formality. Deno testified that he requested payment from Moncrieffe, but Moncrieffe claimed to owe only 7.5% of the amount recovered, not a third. The parties then corresponded unsuccessfully to try to resolve the dispute before Deno filed suit. We see no basis to foreclose Deno's lawsuit because he did not send a formal invoice to demand payment when Moncrieffe had already refused to pay.[5]

---

[5] In light of the evidence showing the parties' discussions about Deno's fees before he filed suit, we likewise reject Moncrieffe's claim that Deno failed "to engage in reasonable discussion" with Moncrieffe "regarding the attorney's fees being claimed" (Assignment of Error 7).

We also reject Moncrieffe's claim that Deno waived his one-third contingent fee in his October 28, 2020 email, which Moncrieffe interprets as having requested payment by the hour instead (Assignment of Error 8). A "waiver 'is the voluntary, intentional abandonment of a known legal right, advantage, or privilege.'" *Baumann v. Capozio*, 269 Va. 356, 360 (2005) (quoting *Fox v. Deese*, 234 Va. 412, 425 (1987)). "[A] waiver must be express, or, if it is to be implied, it must be established by clear and convincing evidence." *Id.* at 361 (quoting *Pysell v. Keck*, 263 Va. 457, 460 (2002)); *see also id.* (noting that prior cases had used "different legal phrases to describe the burden" of proving implied waiver, but clarifying that the standard is "clear and convincing evidence"); *Yazdani v. Sazegar*, 76 Va. App. 261, 270 (2022) (requiring "that a waiver of a right be knowing, intelligent, and voluntary and that an agreement to waive a right must be clear and unambiguous").

The trial court did not err by failing to find that Deno waived his contingent-fee claim. True, Deno's October 28 email mentioned that "[a]n attorney with a contingency contract is entitled to quantum meruit compensation after withdrawing under the same circumstances in which I withdrew." But far from waiving his contingent-fee claim, Deno's email threatened to sue on it if Moncrieffe failed to pay. Deno maintained that Moncrieffe "refused to pay the contingency fee," and Deno offered to settle for an amount consistent with his one-third contingent-fee demand. The email contains no express waiver. And the full email, read in context, fails to establish an implied waiver either. In short, Moncrieffe failed to prove by clear and convincing evidence that Deno knowingly and intentionally relinquished his contingent-fee claim.

B. *The circuit court did not err in awarding interest.*

The final order of the circuit court awarded Deno "$9,157.50, with interest at 6% from the date of April 19, 2021, until paid, and the plaintiff's costs of $61.00." Moncrieffe and Deno

raise separate objections under Code § 8.01-382 to using the April 19, 2021 date for prejudgment interest. Deno further claims that the circuit court erred in awarding him post-judgment interest of 6%, rather than 10% under Code § 16.1-113. The proper interpretation of those code sections presents a question of law that we review de novo. *E.g.*, *Va. Dep't of Tax'n v. R.J. Reynolds Tobacco Co.*, 300 Va. 446, 454 (2022).

While the common law of England restricted the award of interest on a judgment, the General Assembly in the early days of our Commonwealth enacted laws permitting prejudgment and post-judgment interest to be awarded, both at law and in equity. *See Tazewell v. Saunders*, 54 Va. (13 Gratt.) 354, 369-70 (1856) ("In England, . . . interest will not generally be given on judgments; while in this state it will."); 1804 Va. Acts ch. 8, § 2 (1805) (governing prejudgment and post-judgment interest in "all actions founded on contracts"); 1 Rev. Code ch. 66, § 58 (1819) (empowering chancery courts "to award interest" on "any sum or sums of money" awarded "until the same shall be paid"). "The justification" for awarding "interest on damages—whether pre-judgment, post-judgment, or both," is that "'[n]atural justice [requires] that he who has the use of another's money should pay interest for it.'" *Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 275 Va. 41, 63 (2008) (second alteration in original) (quoting *Jones v. Williams*, 6 Va. (2 Call) 102, 106 (1799)).

The current rules governing prejudgment and post-judgment interest are found in Code § 8.01-382:

> In any . . . action at law or suit in equity, the final order, verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The final order, judgment or decree entered shall provide for such interest until such principal sum be paid. If a final order, judgment or decree be rendered which does not provide for interest, the final order, judgment or decree awarded or jury verdict shall bear interest at the judgment rate of interest as provided for in § 6.2-302

- 13 -

from its date of entry or from the date that the jury verdict was rendered.

"[T]he principal distinction" between the two types of interest is that "pre-judgment interest is discretionary . . . while . . . post-judgment interest . . . is mandatory." *Upper Occoquan Sewage Auth.*, 275 Va. at 63. The statutory text encapsulates that distinction: the trier of fact "*may* provide for interest on any principal sum awarded, or any part thereof, and fix the period at which such interest shall commence," but the final judgment "*shall* provide for such interest until such principal sum be paid." Code § 8.01-382 (emphasis added).[6]

The current judgment rate of interest is "an annual rate of six percent." Code § 6.2-302(A). That 6% rate generally applies unless a contract specifies a higher rate for prejudgment or post-judgment interest. *See* Code § 6.2-302(A)-(B).

### 1. The court did not abuse its discretion when awarding prejudgment interest (Assignment of Error 9, Cross-Error 1).

The circuit court awarded Deno prejudgment interest, commencing April 19, 2021. Both sides say that the court chose the wrong date. Deno advocates an earlier date (when Moncrieffe received the settlement funds) while Moncrieffe thinks prejudgment interest should have been withheld altogether, or, at the very least, should not have started until Moncrieffe filed his grounds of defense in the general district court.

We find no abuse of discretion in the date picked by the circuit court. The court could have withheld prejudgment interest altogether. *E.g.*, *Grubb v. Grubb*, 272 Va. 45, 57 (2006). But having decided to award it, the court chose a rational start-date. The court explained that

---

[6] "Generally, prejudgment interest is not allowed on unliquidated damages in dispute between the parties." *Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106, 126 (1998). And because post-judgment interest runs on the "principal sum awarded," Code § 8.01-382, it does not accrue on any prejudgment interest awarded to the plaintiff. *Upper Occoquan Sewage Auth.*, 275 Va. at 67.

- 14 -

April 19, 2021 was the date Moncrieffe was served with the warrant-in-debt. By that date, Moncrieffe was plainly on notice of Deno's fee claim.

      *2. Deno failed to preserve his claim that the circuit court should have awarded 10% interest (Cross-Error 2).*

Deno argues in his other assignment of cross-error that the circuit court erred by failing to award him 10% interest under Code § 16.1-113. That statute addresses the "damages" to which an appellee is entitled when he wins a money judgment in the general district court and then prevails in a trial de novo in the circuit court. *See Nationwide Mut. Ins. Co. v. Tuttle*, 208 Va. 28, 32-33 (1967). The statute provides:

> If judgment is recovered by the appellee, execution shall issue against the principal and his surety, jointly or separately, for the amount of the judgment, including interests and costs, *with damages on the aggregate at the rate of ten percent annually*, from the date of that judgment until payment, and for the costs of the appeal.

Code § 16.1-113 (emphasis added).

Similar to Virginia's prejudgment and post-judgment interest laws, this 10%-damages provision dates to the earliest days of the Commonwealth. *See* 1777 Va. Acts 25, 29 (§ XLIII) (providing for the plaintiff to recover "damages, besides costs, [of] ten *per centum per annum* upon the principal sum" awarded in the General Court when the defendant had appealed the case from the county or hustings court). As our Supreme Court explained in *Tuttle*, "It is fairly obvious that the purpose of the ten per centum penalty damage was for the purpose of discouraging appeals with little or no basis in law or fact from courts not of record." 208 Va. at 33.

We cannot reach Deno's 10%-interest-as-damages argument, however, because he failed to raise it in the circuit court. Rule 5A:18. That omission "deprived the [circuit court] of the opportunity to correct the alleged error and thus violated the principles associated with the contemporaneous objection rule." *Williams v. Gloucester (Cnty. of) Sheriff's Dep't*, 266 Va.

409, 410 (2003).  *Cf. Tazewell Oil Co. v. United Va. Bank/Crestar Bank*, 243 Va. 94, 114 (1992) ("Tazewell invited the court to allow the jury to fix the rate of prejudgment and post-judgment interest, and it cannot now complain of the court's failure to modify the rate of interest fixed by the jury.").

CONCLUSION

In short, the circuit court did not err in awarding Deno his one-third contingency fee nor in determining the award of prejudgment and post-judgment interest.

*Affirmed*.